1  **DAVID J. COOK, ESQ. (SBN 060859)**
   **COOK COLLECTION ATTORNEYS**
2  **A PROFESSIONAL LAW CORPORATION**
   165 Fell Street, San Francisco, CA 94102-5106
3  Mailing Address: P.O. Box 270
   San Francisco, CA 94104-0270
4  Telephone: (415) 989-4730
   Facsimile: (415) 989-0491
5  Email: Cook@SqueezeBloodFromTurnip.com
   File No. 55.796
6
   Attorneys for Plaintiff
7  JOHN FALKENSTEIN

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11
   JOHN FALKENSTEIN,                    )   Case No. 13-cv-03605-WHO
12                                       )
            Plaintiff,                   )   MEMORANDUM OF POINTS AND
13                                       )   AUTHORITIES IN OPPOSITION TO MOTION
   vs.                                   )   TO CHANGE VENUE PURSUANT TO 28
14                                       )   U.S.C. § 1404
   SHIPCO TRANSPORT, INC.,               )
15                                       )   Date:   October 23, 2013
            Defendant.                   )   Time:   2:00 p.m.
16  _____     )   Courtroom: 2
                                             Judge: Hon. William H. Orrick
17

18         COMES NOW Plaintiff JOHN FALKENSTEIN, who hereby opposes that certain Notice

19  of Motion and Motion to Change Venue Pursuant to 28 U.S.C. § 1404, as follows:

20                      **I.  INTRODUCTION.**

21         Plaintiff JOHN FALKENSTEIN recovered Judgment to and against SHIPCO

22  TRANSPORT SDN BHD ("Debtor") arising out of a personal injury in the action entitled *John*

23  *Falkenstein v. Shipco Transport, Inc., et al.*, Los Angeles County Superior Court, Case No.

24  NC042676. The Judgment is marked *Exhibit "A."* [1] The Debtor has retained counsel who has

25  filed a motion to vacate the default and default judgment, which the court denied, and the decision

26  thereof is marked *Exhibit "B."* The Debtor has filed an appeal with the Court of Appeal, Second

27  _____

28         [1]  All exhibits are incorporated by reference as though fully set forth in this Memorandum
   in their entirety and are attached to the Declaration of David J. Cook, Esq. which is filed
   contemporaneously herein.

   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO CHANGE VENUE
   PURSUANT TO 28 U.S.C. § 1404 - CASE NO. 13-cv-03605 WHO                                    1

1    Appellate District.  During the course and scope of the enforcement action. Plaintiff served post-

2    judgment interrogatories. in which the Debtor defaulted, and the order compelling discovery is

3    marked *Exhibit "C."*  The Debtor has made no effort by which to answer the discovery, either in

4    part or in whole.  The Debtor did not oppose the motion to compel discovery, and no appeal has

5    been taken from the order.

6                              ## II. WHERE IS STI?

7            First. STI is a global entity with offices throughout the entire world.  A copy of a list of all

8    of their offices is marked *Exhibit "D."*  STI has an office in S. San Francisco (501 South Airport

9    Blvd. Suite 212. So. San Francisco, CA 94080)

10                      ## III. STATUS OF CURRENT PROCEEDINGS.

11           Plaintiff filed an action to pierce the corporate veil. seeking to impose liability upon

12   SHIPCO TRANSPORT, INC. ("STI") in the San Francisco County Superior Court, in that action

13   entitled *John Falkenstein, an individual, vs. Shipco Transport, Inc., a New Jersey corporation, et

14   al..* Case No. CGC-13-530670 ("Alter Ego Action").  Service of process was effectuated, and STI

15   filed an Answer, but did not raise venue after an affirmative defense thereunder.  Instead, STI has

16   now filed a discretionary motion for change of venue under 28 U.S.C. § 1404(a). which Plaintiff

17   now opposes.

18                  ## IV. STANDARDS FOR DISCRETIONARY CHANGE OF VENUE.

19           A motion for change of venue pursuant to 28 U.S.C. § 1404 lies with the discretion of the

20   court. *See Jones v. GMC Franchise, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000).  The decision whether

21   to grant the motion turns on the facts of the particular case.  In reviewing the motion to transfer,

22   the court may consider the following factors to determine whether the transfer was appropriate:

23   The location where the relevant agreement was negotiated and executed. the state which is most

24   familiar with the governing law. the plaintiff's choice of forum. the parties' respective contracts

25   with the forum. the contracts relating to the plaintiff's cause of action in the chosen forum, the

26   differences in the cost of litigation in the two forums, the availability of compulsory process to

27   compel attendance of unwilling non-party witnesses. and the access to the sources or proof. *See

28   Jones v. GMC Franchise, Inc.* at page 495.

1    In order to meet the burden, the moving party must present affidavits or declarations to

2  establish the facts supporting the transfer. The affidavits or declarations must be admissible

3  evidence consisting of non-hearsay statements by competent witnesses. Conclusory declarations

4  are insufficient. *See Stop-A-Flat Corporation v. Electra Start of Michigan, Inc.*, 507 F.Supp. 647,

5  652 and N.D.Cal. Local Rule 7.5. A party seeking to transfer cannot rely upon vague

6  generalizations as to convenient factors. The party is obligated to identify the key witnesses to be

7  called and present a generalized statement of what their testimony would include. *See Heller*

8  *Financial, Inc. v. Midwhey Powder*, 883 F.Supp. 1286, 1293 (7th Cir. 1989).

9                          **V. ANALYSIS OF PLAINTIFF'S CASE.**

10    An analysis of Plaintiff's case would be illustrative in determining the type of proof which

11  Plaintiff seeks to bring to bear, and commensurately, the relative defenses. While this case is

12  brought by an individual to impose liability based upon a single enterprise theory, which is a

13  subset of classic alter ego doctrine, this case revolves around the financial transactions by and

14  among the Debtor and STI. The core allegation in the Complaint is the following:

15    "8. Shipco Malaysia and STI are corporations so closely connected that they are
      one and the same entity, and represent a joint enterprise in which both entities are
16    jointly and severally liable for the debts of each other. STI represents Shipco
      Malaysia as one of its "agents and/or offices" on its website. Shipco Malaysia
17    bears, uses, and advertises under the trademark issued by the United States Patent
      and Trademark Office ("USPTO") in which the owner of the trademark is STI. The
18    business of Shipco Malaysia is a non-vessel operating common carrier ("NVOCC")
      which issues "house bills of lading" primarily to logistics companies and others in
19    Malaysia and Southeast Asia, and provides for transportation of the goods by way
      of oceangoing containers to the STI Los Angeles facility located at 311 W. Artesia
20    Blvd., Compton, CA 90220. The STI facility in Compton, CA provides for
      continuing shipment of the goods under the house bill of lading to their ultimate
21    points of destination in the U.S. Therefore, STI and Shipco Malaysia act in tandem
      with each, and is one, continuous seamless business. Moreover, Defendants and
22    each of them share the same name, logo, trademark, symbol, identity, commonality
      of purpose, and business operation. Defendants and each of them maintain a joint
23    web site that identifies Shipco Malaysia as one its branches or offices and not a
      separate entity.
24
25    9. In a proceeding before the Federal Maritime Commission, Case No. P1-08, STI
      represented the following:
26    "Shipco Transport, Inc maintains nine (9) branch offices through the United States,
      in addition to a headquarters operation. Shipco was established in 1988 and has
27    developed into one of the world's leading neutral NVOCC's, with more than 40
      offices worldwide, in excess of 800 employees and covering all major trade lanes.
28    (Page 1, Paragraph I, of the "Reply Comments of Shipco, Inc., in support of the Petition of
      the National Customs Brokers and Forwarder's Association of America ("NCBFAA") For

1    Exemption from Mandatory Rate Tariff Publication," dated September 25, 2008, FMC
2    Petition P1-08. " (Copy attached hereto marked *Exhibit "C"* and incorporated by
     reference.)

3    One of these offices would be the facility commonly known herein as Shipco Malaysia.

4    (First Amended Complaint, paragraphs 8 & 9, pages 2 & 3, Document 11)

5    California courts have developed a long and well-understood line of cases which have

6    analyzed single enterprise cases, and moreover, the elements of proof. In *Greenspan v. LADT,*

7    *LLC*, 121 Cal. Rptr. 3d 118, 138-39 (Cal. App. 2d Dist. 2010), the court enumerated the elements

8    of proof, as follows:

9         " 'The alter ego test encompasses a host of factors: "[1] [c]ommingling of funds
          and other assets, failure to segregate funds of the separate entities, and the
10        unauthorized diversion of corporate funds or assets to other than corporate uses ...;
          [2] the treatment by an individual of the assets of the corporation as his own ...; [3]
11        the failure to obtain authority to issue stock or to subscribe to or issue the same ...;
          [4] the holding out by an individual that he is personally liable for the **139 debts
12        of the corporation ...; the failure to maintain minutes or adequate corporate records,
          and the confusion of the records of the separate entities ...; [5] the identical
13        equitable ownership in the two entities; the identification of the equitable owners
          thereof with the domination and control of the two entities; identification of the
14        directors and officers of the two entities in the responsible supervision and
          management; sole ownership of all of the stock in a corporation by one individual
15        or the members of a family ...; [6] the use of the same office or business location;
          the employment of the same employees and/or attorney ...; [7] the failure to
16        adequately capitalize a corporation; the total absence of corporate assets, and
          undercapitalization ...; [8] the use of a corporation as a mere shell, instrumentality
17        or conduit for a single venture or the business of an individual or another
          corporation ...; [9] the concealment and misrepresentation of the identity of the
18        responsible ownership, management and financial interest, or concealment of
          personal business activities ...; [10] the disregard of legal formalities and the failure
19        to maintain arm's length relationships among related entities ...; [11] the use of the
          corporate entity to procure labor, services or merchandise for another person or
20        entity ...; [12] the diversion of assets from a corporation by or to a stockholder or
          other person or entity, to the detriment of creditors, or the manipulation of assets
21        and liabilities between entities so as to concentrate the assets in one and the
          liabilities in another ...; [13] the contracting with another with intent to avoid
22        performance by use of a corporate entity as a shield against personal liability, or the
          use of a corporation as a subterfuge of illegal transactions ...; [14] and the formation
23        and use of a corporation to transfer to it the existing liability of another person or
          entity." ... [] This long list of factors is not exhaustive. The enumerated factors may
24        be considered "[a]mong" others "under the particular circumstances of each case." '
          ... 'No single factor is determinative, and instead a court must examine all the
25        circumstances to determine whether to apply the doctrine....' " (*Zoran Corp. v.
          Chen* (2010) 185 Cal.App.4th 799, 811–812, 110 Cal.Rptr.3d 597, citations
26        omitted.)

27   In *Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, C 12-3103 SI, 2012 WL 4097711 (N.D. Cal.

28   2012), the court likewise set forth the elements of proof, as follows:

1    "When evaluating whether a single enterprise exists, California courts require: (1)
     there be such a unity of interest and ownership between the two entities that the
2    separate personalities do not in reality exist; and (2) there would be an inequitable
     result if there is no finding of a single enterprise. *See Wady v. Provident Life & Acc.*
3    *Ins. Co. of America,* 216 F.Supp.2d 1060, 1066 (C.D.Cal.2002) (applying
     California law). Factors courts consider when determining whether the first part of
4    the single enterprise test has been satisfied include: commingling of funds and other
     assets of the entities, the holding out by one entity that it is liable for the debts of
5    the others, identical equitable ownership in the entities, use of the same offices and
     employees, and use of one as a mere shell or conduit for the affairs of the others. *Id.*
6    (citing *Roman Catholic Archbishop v. Superior Court,* 15 Cal.App.3d 405, 411, 93
     Cal.Rptr. 338 (1st Dist.1973)).

7
     In *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.,* 159 Cal. Rptr. 3d 469, 480-81
8
     (Cal.App.2d Dist. 2013), the court stated as follows:
9
10   "Factors for the trial court to consider include the commingling of funds and assets
     of the two entities, identical equitable ownership in the two entities, use of the same
11   offices and employees, disregard of corporate formalities, identical directors and
     officers, and use of one as a mere shell or conduit for the affairs of the other.
12   [Citation.] No one characteristic governs, but the courts must look at all the
     circumstances to determine whether the doctrine should be applied. [Citation.]'
13   [Citation.]" (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305,
     1341–1342, 90 Cal.Rptr.3d 589; accord *Wehlage v. EmpRes Healthcare, Inc.*
14   (N.D.Cal.2011) 791 F.Supp.2d 774, 782.)"

15   Therefore, the participation by the individual plaintiff would be nominal, at best.  Plaintiff

16   was injured on the job and this judgment arises from a default judgment rendered against the

17   Debtor.  These cases tend to be "books and records cases."  The question therefore is where are the

18   "books and records," and moreover, where are the individuals who would be the likely witnesses,

19   and even party witnesses.  As set forth below, these witnesses, documents, and access to proof are

20   not located in the Central District (Compton, CA), but rather located in Hoboken, New Jersey.

21   **VI. POST-JUDGMENT DISCOVERY DEMONSTRATES THAT THE GRAVITY OF
     THIS CASE IS IN HOBOKEN, NEW JERSEY, AND NOT LOS ANGELES.**

22       Plaintiff has already conducted significant discovery, consisting of the post-judgment

23   examination of Gary Osterbach and Aidee Gamino.  Gary Osterbach is the Vice President of

24   Midwest Region.  His role is to oversee the operations of STI in Los Angeles, San Francisco,

25   Seattle and Chicago.  (Post-judgment order of examination dated June 28, 2013, hereinafter

26   "Exam." p. 18, ll. 13-18.  Relevant portions from the transcript of the examination are marked

27   *Exhibit "E."*)  Gary Osterbach is also the General Manager for the operations of STI, Los Angeles.

28   (Exam., p. 18, ll. 22-25.)

The gist of this action is to demonstrate that the Debtor and STI are one and the same entity, that they consist of a "seamless entity," that they consist of a "single enterprise," and accordingly, they are equally jointly and severally liable for the underlying judgment itself. This is a classic alter ego action seeking to impose liability on an entity so closely related and associated that it become part and parcel of the underlying entity itself.

STI states that the "implicated office" is located in Los Angeles County, and so are the relevant witnesses, Gary Osterbach, General Manager, and Aidee Gamino, Import Manager. (Memorandum in support of motion for change of venue, p. 5, ll. 8-9.)

STI's analysis is in error. The "implicated office" is both the Malaysia facility of STI and, more important, the Hoboken corporate offices. The persons to be deposed, among others, is Christian Mogelvang and Klaus Jepsen (officers of STI), who is located in Hoboken, New Jersey. (Exam., pp 28, ll: 7-17; pp 29, ll. 10-25.) Accounting personnel, and specifically the person to explain the relationship between these two parties from an accounting basis, is located in Hoboken, New Jersey. (Exam., p. 59, ll. 5-18.) The corporate accounting department is located in Hoboken, New Jersey. (Exam., p. 65, ll. 17-25; p. 66, ll. 1-2.) People in charge of negotiating price are located in Hoboken. (Exam., page 66, ll: 18-25, ; page 67: ll: 1-14. Personal in Hoboken are negotiating rates and paying bills. (Exam., pp. 67, 15-25; pp.68, ll 1-14.)

Information regarding payment for the master bills of lading and other accounting matters would be in the hands of individuals located in either Hoboken, New Jersey or Malaysia. (Exam., p. 70, ll. 13-25; p. 71, ll. 1.) Individuals who would be knowledgeable as to the receipt of freight collect charges on house bills of lading likewise are not located in California, but presumably in the corporate offices. (Exam., p. 81, ll. 18-25; p. 82, ll. 1-25; p. 83; ll: 1-2.)

STI in Compton is a "conduit" on behalf of the corporate headquarter in Hoboken. (Exam., page 94, lines 15-25; page 95: ll: 1-22)

Local personnel are not familiar with the Shipco Transport invoices from Hoboken. (Examination, p. 118, ll. 12-20.) The accounting by and between the two companies is done in Hoboken. (Exam., p. 155, ll. 7-25; p. 156, ll. 1.). The personnel in Hoboken would know whether money is wired to the debtor in Malaysia. (Exam., page 157, ll 18-25). Individuals in the Los

1 | Angeles office (Compton) has no knowledge of the money, or transactions, sent to the debtor in

2 | Malaysia. (Exam, page 157, lines 18-25, page 158, ll: 1-20) Accounting functions are handled out

3 | of Hoboken for freight collect charges due the debtor. (Exam., p. 187, ll. 2-25.) Paying for freight

4 | collect charges due the debtor is NOT going to the debtor in Malaysia. The payment for freight

5 | collect charges due the debtor is going to Hoboken. (Exam., page 187, ll 13-25, and Page 188: line

6 | 1 as follows:

7 | "Question: And as far as you know, when there is a Shipco freight collect house bill
of lading, as far as you know, the money is not going to Shipco Malaysia?"

8 | Answer: No.
Question: It's going to Shipco in Hoboken; is that correct?

9 | Answer:` Yes.
Question: Why?

10 | Answer: The invoice is issued here; therefore, we need to collect and it goes in
Hoboken's account, of course."

11 | (Exam, page 187, lines 16-25; page 188, line 1)

12 | The individuals most knowledgeable about handling of money are located in Hoboken.

13 | (Exam., p. 192, ll. 9-23.)

14 | Accordingly, the center of gravity in this case is not in Los Angeles, but Hoboken. New

15 | Jersey, and after that, Malaysia.

16 | This issue is important in determining "the convenience of the parties." Given that the

17 | gravity of this case is in New Jersey or Malaysia, but not Los Angeles. STI can never make out its

18 | burden of proof that the gravity of this case is in Los Angeles, when in fact the witnesses in Los

19 | Angeles indicate no knowledge concerning the relationship between these companies, and

20 | moreover, that the only individuals with knowledge are located in Hoboken or Malaysia.

21 | The testimony of the STI employees is uncontroverted that the business, accounting, and

22 | financial transactions are all handled by individuals at the corporate headquarters in Hoboken,

23 | New Jersey. Sending this case to the Central District of California would certainly not serve the

24 | interest of Plaintiff because the body of proof is located in New Jersey. The core of this case is

25 | discovery due from the accounting, business, management other personnel located in Hoboken,

26 | New Jersey, all for the purpose of making out a case of a single enterprise. If the witnesses in Los

27 | Angeles have literally no knowledge, and the knowledge relating to the operation of STI and the

28 | Debtor are located in Hoboken, nothing is served by moving this case to the Central District of

1  California.

2       This would be a case of moving this matter from Northern California to Southern

3  California, which would not be more convenient for Plaintiff, and in which all of the evidence

4  would be equally inaccessible. This case would not be mor convenient for STI because none of

5  the key witnesses are located in Southern California but are located in New Jersey.

6  ### VII. PARTICIPATION OF FALKENSTEIN.

7       FALKENSTEIN is a Judgment Creditor and would not be a major participant in the trial of

8  this matter. This is an alter ego action in which the primary witnesses are the accounting,

9  management and related personnel of STI.

10 ### VIII. CONVENIENCE OF WITNESSES.

11      STI misstates "convenience of witnesses." STI's motion to transfer under § 1404(a) may

12 be denied where the witnesses are employees of the Defendant, and their presence can be obtained

13 by that party. *See Galonis v. National Broadcasting Co., Inc.,* 498 F.Supp. 789, 793 (1980).

14 Accordingly, the fact that Gary Osterbach and Aidee Gamino are located in Southern California is

15 not a factor.

16 ### IX. PLAINTIFF'S CHOICE OF FORUM IS AFFORDED SUBSTANTIAL WEIGHT.

17      This is Plaintiff's case to try. Plaintiff's choice of forum is afforded substantial weight.

18 *See Williams v. Bowman,* 157 F.Supp.2d 1103, 1106 (2001). The burden of proof therefore rests

19 with the defendant. *See The Carolina Casualty Company v. Data Broadcasting Corporation,* 158

20 F.Supp.2d 1044, 1047 (2001).

21      A motion for change of venue under § 1404 should not be granted if the effect simply is to

22 shift the inconvenience to the party resisting the motion. There is a strong presumption in favor of

23 the plaintiff's choice of forum. As such, the defendant must make a strong showing of

24 inconvenience to warrant upsetting the plaintiff's choice of forum. *See Celestial Mechanix, Inc. v.*

25 *Susquehanna Radio Corporation, et al.,* 2005 WL 4715213 (2005) and *Decker Coal Co. v.*

26 *Commonwealth Edison,* 805 F.2d 834, 843 (9th Cir. 1986). Plaintiff's choice of venue is generally

27 accorded substantial weight. *Williams v. Granite Const. Co.,* 2009 WL 250104 (2009).

28 ### X. STI FAILS TO MEET ITS BURDEN OF PROOF.

1   Defendant cannot overcome Plaintiff's choice of forum. The convenience to the parties is
2   not served by litigating this matter in the Central District of California, when in fact the gravity of
3   proof is located either in Hoboken or Malaysia. Nearly all the witnesses are in fact parties, and
4   specifically, employees of STI, who are all located in Hoboken, and not in Southern California.
5   The ease of access of evidence is straightforward because they principally consist of records. Both
6   Northern and Central District are familiar with California law. There is no consolidation of other
7   claims. There is no particularly local interest in the controversy. The courts are the same in terms
8   of congestion and time of trial. This is a matter of moving this case from the Northern to the
9   Central District, when in fact the Central District has no greater or lesser connection with this case,
10  given that this case rises and falls upon the evidence from Hoboken, New Jersey.

11  In summary, moving the case to the Central District of California does not benefit any of
12  the parties, their employees, or third party witnesses, who are all located in Hoboken.

13  ## XI. STI HAS MADE ITS ELECTION.

14  STI has clearly made its election, by providing at the third party order of examination
15  individuals who stated they have little or no knowledge of the accounting and related business
16  functions of STI. These witnesses readily admit that they have limited or no knowledge and that
17  the accounting functions and financial transactions are undertaken at the corporate office, and not
18  them. They repeatedly stated that the accounting functions, business functions, and accounting
19  records are located in Hoboken or Malaysia, but certainly not Los Angeles.

20  Accordingly, given their stance, STI is now estopped from claiming that the most
21  convenient locale for STI would be the Central District of California. Given the stance that they
22  have little or no knowledge, and that individuals in Hoboken have knowledge, STI is estopped
23  from claiming that the most convenient place would be Los Angeles.

24  ## XII. CONCLUSORY DECLARATION.

25  The declaration in support of the motion is by Robert Campbell, counsel for STI. He
26  recites the basic facts of the case. He does not offer the court any specific evidence in support of
27  this motion for change of venue, and specifically the putative convenience of the parties. He does
28  not indicate why the litigation of this matter would be more convenient for STI located in the

1   Central District of California.  He does not identify any particular non-party witnesses who would
2   be inconvenienced. one way or another, by keeping the case here, or for that matter. the case in the
3   Central District of California.

4         Campbell does not identify how or why STI (Hoboken) would enjoy any greater
5   convenience by litigating this case in the Central District of California. as opposed to the Northern
6   District of California, as STI (Hoboken) is the entity who bears the "laboring oar" of this litigation.
7   Campbell does not identify any particular convenience, one way or another. which STI (Hoboken)
8   would derive from this motion.

9         A motion for change of venue under 1404 if fact-drive, and STI bears the affirmative
10   burden of proof by a preponderance of the evidence.  Counsel's one-page declaration does not
11   even meet this burden of proof.

12                          **XIII. CONCLUSION.**

13        This is an alter ego action which, in many cases, rises and falls on accounting, business.
14   and related records which show the relationship by and between the Debtor and STI.  Upon
15   significant questioning, the representatives of STI indicate to the person that they have no or little
16   information. have no records, and that the individuals with the information are located in
17   Hoboken. New Jersey.  Therefore, STI cannot make out its burden of proof that moving this case
18   to the Central District would be for the "convenience of the parties" as. according to STI. there are
19   no key witnesses located in the Central District of California.  STI likewise cannot claim that the
20   Central District of California would have any greater or different knowledge of the law. court
21   congestion, or otherwise.  The fact that the underlying trial court is located in Southern California
22   is irrelevant, given that the subject matter of this case is an alter ego action.  Finally. the location
23   of Mr. Falkenstein is of no matter. given this is an alter ego action.  Therefore. STI has not made
24   its burden of proof. and this motion should be denied.

25   DATED: September 27. 2013              COOK COLLECTION ATTORNEYS

26                                         By: ___/s/ David J. Cook_____
                                           DAVID J. COOK, ESQ. (SBN 060859)
27                                         Attorneys for Plaintiff
                                           JOHN FALKENSTEIN
28
     F:\USERS\DJCNEW\SHIPCO.oppos change

1  **PROOF OF SERVICE**

2  NORMAN J. RONNEBERG, JR.
   BULLIVANT HOUSER BAILEY PC
3  601 California Street, Suite 1800
   San Francisco, CA 94108
4  *Attorneys for SHIPCO TRANSPORT SDN BHD*

5  ROBERT G. CAMPBELL
   COX, CASTLE & NICHOLSON LLP
6  2049 Century Park East, 28th Floor
   Los Angeles, CA 90067-3284
7  *Attorneys for SHIPCO TRANSPORT, INC.*

8      I declare:

9      I am employed in the County of San Francisco, California. I am over the age of eighteen
   (18) years and not a party to the within cause. My business address is 165 Fell Street, San
10 Francisco, CA 94102. On the date set forth below, I served the attached:

11     MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION
       TO CHANGE VENUE PURSUANT TO 28 U.S.C. § 1404
12
       DECLARATION OF DAVID J. COOK, ESQ. IN SUPPORT OF OPPOSITION TO
13     MOTION TO CHANGE VENUE PURSUANT TO 28 U.S.C. § 1404

14 on the above-named person(s) by:

15    XXX    (BY MAIL) Placing a true copy thereof, enclosed in a sealed envelope with postage
   thereon fully prepaid, in the United States mail at San Francisco, California, addressed to the
16 person(s) served above.

17     I declare under penalty of perjury that the foregoing is true and correct.

18     Executed on September 27, 2013 at San Francisco, California.

19
                          /s/   Karene Jen
20                             Karene Jen

21

22

23

24

25

26

27

28