**DAVID J. COOK, ESQ. (SBN 060859)**
**COOK COLLECTION ATTORNEYS**
**A PROFESSIONAL LAW CORPORATION**
165 Fell Street, San Francisco, CA 94102-5106
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Telephone: (415) 989-4730
Facsimile: (415) 989-0491
Email: Cook@SqueezeBloodFromTurnip.com
File No. 55,796

Attorneys for Plaintiff
JOHN FALKENSTEIN, an individual

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| JOHN FALKENSTEIN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SHIPCO TRANSPORT, INC., a corporation;<br><br>AND DOES I THROUGH X, AND EACH OF THEM, INCLUSIVE<br><br>Defendants. | CASE NO. 2:13-cv-08052-BRO-JC<br><br>SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES<br><br>The amount prayed for is greater than $25,000.<br><u>$3,238,390.02.</u> |

Plaintiff hereby complains of Defendants, and each of them, as follows:

## FIRST CAUSE OF ACTION

## FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05

1. Plaintiff is an individual residing in the County of Los Angeles, State of California.

2. Defendant SHIPCO TRANSPORT, INC. ("STI") is a corporation, organized and existing under the laws of the State of New Jersey, with its principal place of business in the State of New Jersey, but with offices and branches throughout the United States, and moreover with a branch office located in the City of South San Francisco, County of San Mateo, State of California. The business of

SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES
CASE NO. 2:13-cv-08052-BRO-JC

1

STI is to act as a global non-vessel common carrier ("NVOCC") which is also classified under certain circumstances as an ocean transport intermediary ("OTI") by and through the Federal Maritime Commission ("FMC"). STI is a licensee under the FMC. STI is the owner and holder of a license issued by the FMC to operate as an NVOCC.

3. "Parent owning 100% of Plaintiff [hereinafter "STI"] corporation is SSNYC Inc., 80 Washington Street, Hoboken, NJ 07030; STI [Plaintiff in the original filing] has no subsidiaries; SSNYC wholly owns Worldwide Alliance Inc. and International Cargo Terminals Inc., both of which are registered at the above Hoboken address; SSNYC Inc. is 100% owned by Shipco Transport Holding A/S in Denmark, and Shipco Transport Holding A/S is 100% owned by Scan Shipping A/S, of Denmark." (USDC, S.D.N.Y. case entitled *Shipco Transport Inc. v. JDB International, Inc. and Lapton Freight International, Ltd.*, Case No. 09CV7532CM, Rule 7.1 Statement, Docket #2)

4. Scan-Shipping (later Scan Group), was founded in Copenhagen, Denmark on April 1st, 1969 by Mr. A. Simonsen at the age of 24. It remained a one man owned company until it became a limited company in 1977. Mr. A. Simonsen is still the C.E.O. and Sole Proprietor of Scan Group including the Shipco Transport group of companies, the Scan-Shipping group of companies, the Strait Air Transport group of companies etc. Liner agency is still one of the major activities of the Group in Scandinavia and the Baltic region. In addition: General forwarding, Airfreight, NVOCC, Hotel & Golf are today part of the business. The Scan Group Headquarter for all subsidiaries and group activities remains in Copenhagen with Mr. A. Simonsen at the helm. April 1st 2014 marks Scan Group's 45th anniversary. Today Scan Group is present in over 40 countries worldwide and employs more than 3,000 staff in 156 offices. (Source: Scan Group website)

5. 1989 U.S.A. - LOS ANGELES

1    The 2nd Shipco Transport office was opened in Long Beach, California in

2  1989 catering to the Trans Pacific market.

3    1992 MALAYSIA - JOHOR BAHRU

4    The group's first office in Malaysia was opened in Johor Bahru on March 1st

5  a992. Since then offices in Port Kelang (Kuala Lumpur) and Penang have been

6  added.

7    1995 U.S.A. - MALAYSIA - PORT KELANG (KUALA LUMPUR)

8    Shipco Transport Sdn.B Bhd., Port Kelang, was established on April 7th 1995

9  to further service the growing customer base in Malaysia, and to establish a presence

10 in the main deep sea port in Port Kelang.

11   1997 U.S.A. - HOBOKEN (NEW JERSEY)

12   As a natural development and in cooperation with the parent company, Scan-

13 Shipping A/S, Copenhagen and its Project Division, Shipco Transport Inc.,

14 Hoboken New Jersey established a Project/Out of Gauge Department on June 1st

15 19979.  This new Department provided services to the existing customer base

16 ranging from a 20' open top container with overheight to complete turnkey projects.

17   6.  Klaus Jepsen is a member of the board of directors of Scan Group since

18 1975.  Scan Group is the corporate parent directly or through a wholly owned

19 intermediary of SHIPCO TRANSPORT SDN BHD ("Shipco Malaysia").

20   7.  Shipco Malaysia is a corporation, or non-natural entity, organized and

21 existing under the laws of Malaysia, with its place of business located in Malaysia.

22 Shipco Malaysia is an NVOCC, but not licensed by the FMC.  The business of

23 Shipco Malaysia is to provide NVOCC services to "Merchants" consisting of its

24 customer who retain Shipco Malaysia to provide for the carriage of freight from

25 Malaysia and related areas to worldwide destinations which generally consist of

26 destinations located in the United States, in which STI represents the conduit entity

27 by which to receive the delivery of the freight.

28   8.  Klaus Jepsen at all times is the President, CEO, director, and/or person

SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND
CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES
CASE NO.  2:13-cv-08052-BRO-JC

1   directly in charge of and manages the affairs of STI.

2       9. According to the records of the FMC, on Page 5 of the Application for

3   License with the FMC, attached hereto marked *Exhibit "A,"* states as follows:

4       16. Shipco Transport Inc. is 100% subsidiary of Scan-Shipping Inc., (a
New York corporation), which is 100% subsidiary of Scan-Shipping,
5       Copenhagen.

6       10. Klaus Jepsen and the other managing members of SCAN-SHIPPING

7   and/or related entities are the same managing directors of and with supervision and

8   control over the operation of both STI and Shipco Malaysia. Moreover, the term

9   "managing director" under the United States corporate nomenclature means

10   executive officer, such as an executive vice president or other individual with actual

11   supervisory control. STI and Shipco Malaysia are effectively owned and operated

12   by the same entity(ies) through one or more layers of corporate parents and

13   upstream 100% owners.

14       11. At all times herein mentioned, Klaus Jepsen and other managing

15   members directed, controlled, maintained, and operated Shipco Malaysia and STI as

16   part of one global NVOCC as represented on the STI website which represents

17   Shipco Malaysia as one of the offices or branches of STI and that Shipco Malaysia

18   is listed as one of the offices or branches of STI on the STI invoices.

19       12. Plaintiff is unaware of the true names or capacities of Defendants named

20   as DOES I THROUGH DOES X, AND EACH OF THEM, INCLUSIVE, and prays

21   leave of court to insert their true names and capacities when ascertained.

22       13. At all times herein mentioned, Defendants, and each of them, are the

23   agents, employees, and servants of each other and have committed the acts, conduct

24   and activities within the course and scope of their agency and/or employment.

25       14. Plaintiff was injured based upon the negligence and carelessness, among

26   others, of Shipco Malaysia herein. Plaintiff initiated an action in the Los Angeles

27   County Superior Court, entitled *JOHN FALKENSTEIN vs. SHIPCO TRANSPORT,*

28   *INC.; NIPPON YUSEN KAISHA (NYK) LINE; SHIPCO TRANSPORT SDN BHD;*

*NYK SHIPMANAGEMENT PTE, LTD., et al.*, Case No. NC 042676 ("Tort Action"). The Tort Action culminated in the entry of a Default Judgment against Shipco Malaysia ("*Falkenstein Judgment*"), a copy which is attached hereto marked *Exhibit "B"* and incorporated by reference. Plaintiff obtained judgment against Shipco Malaysia, in which the amount of the judgment is $3,238,390.02, and interest accruing from 12/9/09 at a daily rate of $887.23. The current amount due under the *Falkenstein Judgment* to date of filing this Complaint is $4,343,878.52. Shipco Malaysia has taken no action to pay this *Falkenstein Judgment*, even though Shipco Malaysia is a 100% subsidiary of Scan-Shipping (later Scan Group).

15. Shipco Malaysia and STI are corporations so closely connected that they are one and the same entity, and represent a joint enterprise in which both entities are jointly and severally liable for the debts of each other, pursuant to the rules and regulations of the FMC. STI represents Shipco Malaysia as one of its "agents and/or offices" on its website. Shipco Malaysia bears, uses, and advertises under the trademark issued by the United States Patent and Trademark Office ("USPTO") in which the owner of the trademark is STI. The business of Shipco Malaysia is a non-vessel operating common carrier ("NVOCC") which issues its own "house bills of lading" primarily to logistics companies and others in Malaysia and Southeast Asia, and provides for carriage of the freight by way of oceangoing containers to the STI's Los Angeles facility located at 311 W. Artesia Blvd., Compton, CA 90220. A copy of a batch of house bills of lading is attached hereto marked *Exhibit "C"* and incorporated by reference herein. A copy of the Shipco Malaysia Terms and Condition is attached hereto marked *Exhibit "D"* and incorporated by reference herein, which came from the STI website which lists Shipco Malaysia as one of its offices or branches. Plaintiff is further informed and believes that Shipco Malaysia uses the terms and condition on *Exhibit "D"* as its own house bills of lading. *Exhibit "D"* also are the terms and conditions for the bills of lading issues by STI, as set forth in STI's bill of lading, marked *Exhibit "E."*

16. The STI facility in Compton, CA provides for continuing shipment of the freight under Shipco Malaysia's house bills of lading to their ultimate points of destination in the U.S. Therefore, STI and Shipco Malaysia act in tandem with each, and is one, continuous seamless business on behalf of their customers. Moreover, Defendants and each of them share the same name, logo, trademark, symbol, identity, commonality of purpose, and business operation. Defendants and each of them maintain a joint web site that identifies Shipco Malaysia as one its branches or offices and not a separate entity. The bills of lading marked *Exhibit "C"* show a trademark in the upper right hand corner which is the same trademark for STI, and moreover, is the trademark registered with the USPTO. On the bills of lading marked *Exhibit "C,"* Shipco Malaysia is deemed the issuer thereof and the carrier whose name appears in the lower right hand corner.

17. In a proceeding before the FMC, Case No. P1-08, STI represented the following:

> "Shipco Transport, Inc maintains nine (9) branch offices through the United States, in addition to a headquarters operation. Shipco was established in 1988 and has developed into one of the world's leading neutral NVOCC's, with more than 40 offices worldwide, in excess of 800 employees and covering all major trade lanes. (Page 1, Paragraph I, of the "Reply Comments of Shipco, Inc., in support of the Petition of the National Customs Brokers and Forwarder's Association of America ("NCBFAA") For Exemption from Mandatory Rate Tariff Publication," dated September 25, 2008, FMC Petition P1-08. "

(Copy attached hereto marked *Exhibit "F"* and incorporated by reference.) One of these offices would be the facility commonly known herein as Shipco Malaysia.

18. STI and Shipco Malaysia use the same bills of lading, stationary, the same billing, and represent themselves as a "related entity." In a deposition in the Tort Action, Aidee Gamino, an employee for and on behalf of STI, testified in her deposition of November 19, 2008, as follows:

> Q. Who made the arrangements, to you knowledge:
> A. It was Shipco Transport Asia.
> Q. And Shipco Transport Asia is located in Malaysia; is that correct?
> A. Yes.

Q. And that's a related company to Shipco Transport, Inc., correct?
A. They're different entities.
Q. I understand they may be different entities, but are they related entities?
A. Yes.
Q. They have basically the same name, correct?
A. Yes."
(Pages 13, lines 12-24)

Q. What is the relationship of those two companies?
A. Shipco Los Angeles is the receiving end of all incoming containers that Shipco Malaysia arranged for with the steamship lines."
(Page 14, lines 11-15)

Q. In terms of the relationship between these related companies, how much contact on a weekly or monthly basis do you have with Shipco Malaysia?
A. Daily.
Q. And can you give me an idea what that contact involves, just an example?
A. It involves identifying shipments, offering discounted rates, mainly operational issues we deal with on a daily basis with the Shipco Malaysia office.
(Page 15, lines 16-24)

Q. They would arrange for the shipments into the United States, so these would be their customers, correct?
A. Yes.
(Page 32, lines 19-22)

The bills of lading were part of the survey report covering investigation and report rollover of container NYKU 701181-3 dated 10/31/06, as follows:

Q. How does that come to Shipco Transport, Inc.?
A. Via electronic mail.
    (The aforementioned documents were marked by the court reporter as Plaintiff's Exhibits 1 and 2 for identification; attached hereto.)
BY MR. DEVIRIAN:
Q. Email?
A. Email.
Q. Can you tell when it was transmitted to Shipco Transport, Inc.?
A. Monday, October 2nd, 2006, at 1453 hours."
(Page 28, lines 1-19)

In this particular case, the container which is the subject of the action, was delivered to STI, as follows:

A. In conjunction with my operations supervisor, Melinda Ochoa, we both agreed to contract with Mr. Bill Robinson to conduct the survey.
A. According to the copy of the report that I have, have just been given by your counsel, on Page 1, it says "Requested by Shipco Transport" and it says "LAX, Inc.
Q. Is that the full name or is it Shipco Transport, Inc.
A. Shipco Transport, Inc.

SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES
CASE NO. 2:13-cv-08052-BRO-JC

7

1  Q. Do you know why there is an LAX in there?
   A. That's just identifying the Shipco LAX office.
2  Q. It is in Compton, California. Is that where the LAX office is considered to be located?
3  A. Yes.
   Q. And it has two vessels named in the report, correct?
4  A. Yes.
   Q. And it has the carrier as NYL Lines, correct?
5  A. That's correct.
   Q. Now, was it – is Melinda Ochoa your supervisor?
6  A. No.
   Q. Are you her -
7  A. I am her supervisor, yes, I am her manager."
   (Page 10, lines 22-25, page 11, lines 1-21)
8
   STI received the containers, as follows:
9
   Q. Would those be the packages that were sent via Shipco Transport
10 Malaysia.
   A. Yes.
11 Q. And those would be the freight that was inside of the container number that we have – that we mentioned earlier, that 813 number,
12 correct?
   A. That is correct.
13 Q. Were there any other containers that were coming as part of this shipment, or is that just a single container, as far as you know?
14 A. Single container.
   (Page 17, lines 18-25, page 18, lines 1-3)
15
   A master bill of lading is discussed, as follows:
16
   Q. Do you have a list of documents that you are aware of?
17 A. We have the notification from NYK advising us that this container had flipped, and we have the master bill, seaway bill from NYK."
18 (Page 18, lines 24-25, and page 19, lines 1-3)

19      19.  Plaintiff is informed and believes that STI collects the freight collect

20 charges and freight prepaid charges from the consignees on the house bills of lading

21 that are issued by Shipco Malaysia for shipments that originate in Malaysia.

22 Plaintiff is also informed and believes that STI receives by direct invoicing or other

23 means all of the freight prepaid and freight collect charges due Shipco Malaysia

24 based upon the issuance of its own house bills of lading and carriage undertaken

25 therein. Plaintiff is informed and believes that STI directly books with the VOCC

26 the actual carriage of freight as arranged under Shipco Malaysia's own house bills

27 of lading.

28      20.  The invoices produced by STI seek to collect for the freight charges,

SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND
CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES
CASE NO. 2:13-cv-08052-BRO-JC                                                    8

whether freight collect or freight prepaid, due Shipco Malaysia, arising from by the shipments that are facilitated, arranged, or ordered by Shipco Malaysia. Plaintiff is also informed and believes that STI collects from the global logistic companies payment for freight prepaid charges and freight collect charges.

21. Shipco Malaysia is in fact the issuer under its own house bills of lading and the sole party identified as the person receiving payment from the Merchant, who is either the consignor, consignee, or other party. The obligor under the bill of lading is the "merchant," which is a defined term under the bill of lading. STI is not a party to the Shipco Malaysia's house bills of lading. STI is not listed as the carrier or obligee under the bill of lading, and therefore has no right to collect the same. A bill of lading is a contract.

22. Within 4 years last past and prior hereto, Shipco Malaysia has been providing the services of a freight forwarder, NVOCC, and/or OTI for and on behalf of global logistics companies, manufacturers, exporters, and other businesses located throughout Asia. As a result thereof, Shipco Malaysia would be entitled to payment for the carriage of freight throughout the world, but primarily throughout the United States, South America, Europe, and other parts of Asia. These accounts and accounts receivable and payments due Shipco Malaysia constitute a valuable asset and income. The revenue generated by way of freight prepaid and freight collect charges due Shipco Malaysia from its own house bill of lading is an AR portfolio.

23. Shipco Malaysia transferred at the direction of Klaus Jepsen and other managing directors of itself and its corporate parent its AR consisting of freight prepaid and freight collect charges (AR portfolio) to STI, who would collect the same by way of STI invoices, even though Shipco Malaysia is the sole obligee under its own house bills of lading. Plaintiff is informed and believes that STI collects the overwhelming bulk of Shipco Malaysia's revenue as a result of the transfer of the AR portfolio from Shipco Malaysia to STI.

24. On June 28, 2013, at a third party ORAP, JOHN FALKENSTEIN through counsel examined Gary Osterbach, who confirmed that Shipco Malaysia is one of the offices operated by STI over 30 countries across 4 continents and employs 1,900 people. Mr. Osterbach also testified that the 1,900 people employed by STI includes the people employed by Shipco Malaysia.

25. Within 4 years last past and prior hereto, STI has been collecting these freight collect and freight prepaid charges earned by Shipco Malaysia by direct billings of Shipco Malaysia's customers. Moreover, STI has also been collecting freight collect and freight prepaid charges. In effect, the bulk of any revenue otherwise earned by Shipco Malaysia has been received and kept by STI. As a result of the fact that STI has collected the freight prepaid and freight collect charges, Shipco Malaysia has become and remains insolvent. The collection of the freight prepaid and freight collect charges (AR portfolio) by STI is a transfer under the UFTA pursuant to Civ.C. § 3439.01(I). The accounts receivable due Shipco Malaysia constitutes its assets as defined under Civ.C. § 3439.01(a).

26. Within 4 years last past and prior hereto, Shipco Malaysia has been insolvent in that the liability represented by this *Falkenstein Judgment* exceeds its assets, and moreover, Shipco Malaysia is presumptively insolvency under Civ.C. § 3439.02( c).

27. As a result thereof, Shipco Malaysia has been unable and/or unwilling to pay this *Falkenstein Judgment* as its AR portfolio has been diverted to third parties and has not been used to pay the *Falkenstein Judgment*.

28. Plaintiff has obtained in the Tort Action an assignment order, a copy of which is marked *Exhibit "G"* and incorporated by reference, which has been served on STI, who has failed and refused and continues to fail and refuse to make payment. Said assignment order dated May 9, 2013 was served on May 9, 2013 on STI, who has failed and refused and continues to fail and refuse to comply therewith. The order was personally served upon STI, and a copy of the Proof of

1  Service is attached hereto marked *Exhibit "H."*

2      29.  During the course of the Tort Action, Plaintiff repeatedly served

3  discovery consisting of post-judgment interrogatories and request for production of

4  documents.  Shipco Malaysia failed and refused and continues to fail and refuse to

5  comply with any of the discovery, which has led to the entry of one or more orders

6  compelling the discovery and the default of the post-judgment discovery orders.

7  The state court in the Tort Action even issued an order to show cause re contempt.

8  Shipco Malaysia declined to respond to the discovery as part and parcel of an

9  overall scheme to delay, hinder and defraud Plaintiff, hide and conceal its assets,

10  hinder, delay and defraud Plaintiff in an attempt to locate levyable assets, and

11  otherwise increase Plaintiff's expense in locating levyable assets against an offshore

12  entity.  Moreover, the management of Shipco Malaysia is the same as the

13  management of STI, and therefore orchestrated for the purpose on behalf of Shipco

14  Malaysia and STI of hindering Plaintiff from ever collecting the *Falkenstein*

15  *Judgment.*

16      30.  During the pendency of enforcement, Shipco Malaysia, under the joint

17  management through Scan-Shipping, and with STI, hired a Malaysian lawyer, who

18  without notice, obtained what amounts to be a TRO and threatened an OSC re

19  permanent injunction which would bar Plaintiff from enforcing the *Falkenstein*

20  *Judgment* against Malaysian domiciliaries.  The records from the Malaysian case

21  demonstrated that Shipco Malaysia, by and through its Malaysian lawyers, at the

22  direction of STI management, were informing Shipco Malaysia customers to

23  disregard the assignment order and defy the same.  The Shipco Malaysia lawyers

24  were expressly and implicitly advising Shipco Malaysia to defy and ignore the

25  assignment order, all for the purpose of hindering, delaying and defrauding Plaintiff

26  and enriching STI in the collection of Shipco Malaysia receivables.

27      31.  Plaintiff is therefore entitled to an order declaring that all payments

28  received by STI for Shipco Malaysia services to be a fraudulent conveyance under

Civ.C. § 3439.05, and therefore that Plaintiff is entitled to a money judgment against STI for the total of funds received by STI under Civ.C. § 3439.08(b). The transfer of the AR portfolio of Shipco Malaysia to STI was without any consideration and at a time when Shipco Malaysia was insolvent or rendered insolvent in that its liabilities exceeded its assets, which constituted a fraudulent conveyance. As a result of the conveyances of the AR from Shipco Malaysia to STI, Shipco Malaysia has been insolvent or rendered insolvent in that Shipco Malaysia is unable or unwilling to pay the *Falkenstein Judgment* and therefore Plaintiff lacks any means to obtain recompense for the injuries suffered as a result of the negligence and carelessness of Shipco Malaysia.

32. Plaintiff is also entitled to an accounting and turnover of all funds received by STI arising from the services of Shipco Malaysia as an NVOCC in an amount necessary to collect and recover this judgment.

33. Plaintiff is also entitled to a money judgment against STI equal to the total amount of all freight prepaid and freight collect charges due Shipco Malaysia collected and received by STI for the 4 years last past and prior to the commencement of this action and in an amount to pay the *Falkenstein Judgment* in full.

### SECOND CAUSE OF ACTION

### FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.04(a)

34. Plaintiff hereby incorporates all prior causes of action as though fully set forth herein.

35. Defendant has sought to collect all, or nearly all of the AR portfolio due Shipco Malaysia, by direct billing of Shipco Malaysia's customers for freight collect and freight prepaid charges. The purpose thereof has been to preclude enforcement by Plaintiff against the customers of Shipco Malaysia for any amounts that might be due Shipco Malaysia for its NVOCC services, and therefore render enforcement by garnishment a futile remedy.

SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES
CASE NO. 2:13-cv-08052-BRO-JC

12

36. The diversion of the AR portfolio owed to and earned by Shipco Malaysia to STI through direct billing and collection by STI is a fraudulent conveyance and transfer perpetrated by Shipco Malaysia with the intent to hinder, delay and defraud Plaintiff, a longshoreman, and hinder him in his quest for payment of this judgment. Shipco Malaysia, at the direction of its management, including Klaus Jepsen and other managing directors, engaged in this transfer for the purpose of rendering itself judgment-proof from enforcement in the United States courts under Civ.C. § 3439.04(a). During the course of enforcement in the state court proceeding, Shipco Malaysia in failing to respond to any discovery which would reveal the existence of its assets implicitly and explicitly communicated that it would categorically refuse to pay the *Falkenstein Judgment* and would never pay this judgment, which is an expression of spite, malice and hatred, even though Shipco Malaysia is part and parcel of a multi-billion dollar global enterprise and financially capable of paying this judgment.

37. The purpose of the transferring the AR portfolio to STI, the Malaysian lawsuit, the refusal to respond to discovery, the refusal to comply with the assignment order, the lack of any rational explanation which would constitute a defense to the assignment order, the issuance by the state court of a short-term restraining order against discovery which was later dissolved based upon the motion to quash, the filing of the meritless appeal, all represents an intention of both Shipco Malaysia and STI to hinder, delay and defraud Plaintiff. The intention at all times of Shipco Malaysia was to hinder, delay and defraud Plaintiff in syphoning away from Shipco Malaysia its AR arising from freight prepaid and freight collect charges due Shipco Malaysia under its own house bills of lading, render Shipco Malaysia judgment-proof, and moreover, render any receivables which are owed by global logistics companies who are the primary customers of Shipco Malaysia, difficult or impossible to reach. STI has engaged in the practice of direct billing to the global logistics companies of the revenues earned by Shipco Malaysia in the issuance of its

own house bills of lading based upon the representation of the fact that Shipco
Malaysia is an "office" or part of STI, and therefore entitled to bill and receive for
Shipco Malaysia's income.

38. Said conveyance was therefore done with the intent to hinder, defraud
and delay Plaintiff, by hindering, delaying and defrauding Plaintiff from reaching
income due Shipco Malaysia in the issuance of its own house bills of lading, as
defined under Civ.C. § 3439.04(a)(1). Said conveyance is therefore void at all times
and that Plaintiff is entitled to recover from STI all payments as received.

39. Said conveyances by the diverted payment stream due Shipco Malaysia
under its own house bills of lading was done with full knowledge by STI's
management that the purpose was to preclude Plaintiff from payment of its
judgment and that Plaintiff would walk away without any redress.  Therefore,
Plaintiff is entitled to punitive and exemplary damages in an amount to be
determined by a jury.  The fact of STI's direct billing of global logistics companies
situated in the United States of Shipco Malaysia's revenue is for the purpose of
preventing Plaintiff from garnishing Shipco Malaysia's customers, and therefore
rendering it judgment-proof.

40. The joint management of STI and Shipco Malaysia have ignored the May
9, 2013 assignment order, failed to provide an accounting, failed to turn over the
freight collect charges, directed Shipco Malaysia to refuse to respond to discovery,
obstructed the assignment order through local legal process, and otherwise engaged
in a course and conduct, including seeking an order to quash post-judgment
discovery, which was denied, filing a notice of appeal which the appellate court
summarily turned aside and affirmed the trial court judgment, and failed in a timely
manner to respond to a Memorandum of Garnishee.  The joint management of STI
and Shipco Malaysia demonstrate a concerted effort by their entities to take every
action possible to prevent Plaintiff from obtaining payment, for no apparent reason
other than that Shipco Malaysia lacked insurance or that the principals of Shipco

Malaysia failed to turn the matter over to their insurance company, if they had one.

41. Plaintiff is entitled to money damages against STI based upon the diversion of Shipco Malaysia's receivables to STI in an amount to pay the *Falkenstein Judgment* in full.

42. The conduct of STI was unconscionable in taking every possible action by and through its executive officers, who are likewise the managing directors and/or executive officers of Shipco Malaysia, to preclude Plaintiff from ever collecting the *Falkenstein Judgment* by hindering, delaying, and defrauding Plaintiff in reaching the AR portfolio due Shipco Malaysia. Plaintiff is therefore entitled to punitive and exemplary damages based upon this course of conduct which is inexcusable given, among other matters, Plaintiff's status as a longshoreman and the person personally responsible for offloading the oceangoing containers by which both STI and Shipco Malaysia profited.  Plaintiff seeks punitive damages in an amount to be determined by this court and consistent with *State Farm Mutual Automobile Insurance v. Campbell*, 538 U.S. 408 (2003), at 9 times the amount of the compensatory damages which the court may award.

THIRD CAUSE OF ACTION.

RESULTING TRUST

43. Plaintiff hereby incorporates all prior causes of action as though fully set forth herein.

44. Funds which have been received by STI on account of the services provided by Shipco Malaysia constitute the property of Shipco Malaysia, and therefore are available for payment to its creditors, which include but are not limited to, Plaintiff.

45. At all times herein mentioned, STI knew that Plaintiff obtained a judgment against Shipco Malaysia because STI controlled, owned, operated, and maintained the business of Shipco Malaysia and that Shipco Malaysia represented itself to be part and parcel of STI through the use of STI's trademark.  STI

SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND
CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES
CASE NO.  2:13-cv-08052-BRO-JC

15

represented in its website, FMC filings, and in response to queries at the third party ORAP, that Shipco Malaysia was an "office of STI." Accordingly, STI is deemed to be part and parcel of Shipco Malaysia and Shipco Malaysia is deemed part and parcel of STI.

46. Accordingly, all funds constituting collections due from consignors or consignees of Shipco Malaysia and held by STI are held in trust as a resulting trust on behalf of the creditors of Shipco Malaysia, and specifically Plaintiff.

47. STI has kept all of the funds constituting collections from Shipco Malaysia's customers, including consignors and consignees, and therefore has used these funds for its own use and benefit. The amount of these funds used by STI belonging to Shipco Malaysia may equal or exceed the amount of the judgment.

48. Plaintiff therefore seeks the following relief: Turnover of all funds collected by STI from the customers, whether consignors or consignees, on behalf of Shipco Malaysia; an accounting for all such funds received from customers, whether consignors or consignees, on behalf of Shipco Malaysia, and to the extent that funds have been used by STI for a money judgment.

WHEREFORE, Plaintiff prays for judgment, as follows:

1. For damages consisting of the total of the AR due Shipco Malaysia for freight prepaid and freight collect charges earned under its own house bills of lading, but collected by STI, for the four years prior to the commencement of this action in the San Francisco County Superior Court.

2. For the entry of an order compelling STI to continue to pay over to Plaintiff all of the Shipco Malaysia's freight prepaid and freight collect charges earned from its customers until the judgment be paid in full, including interest and costs.

3. For an accounting and a continuing accounting borne by STI for its collection of any and all of Shipco Malaysia's freight prepaid and freight collect charges earned from its customers.

SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES
CASE NO. 2:13-cv-08052-BRO-JC

16

4. For an order declaring a resulting trust and that STI holds all of Shipco Malaysia's collected AR in trust for Plaintiff.

5. For money damages equal to the total sum of all AR collected by STI from Shipco Malaysia's customers for freight prepaid and freight collect charges.

6. For an order declaring void as a fraudulent conveyance the collection by STI of the AR earned by Shipco Malaysia arising out of its house bills of lading.

7. For an order holding STI in contempt for its willing failure to comply with the May 9, 2013 assignment order, including but not limited to, its failure and refusal to turn over its freight collect charges, which said contempt may include attorney's fees, damages and costs.

8. For punitive and exemplary damages at 9 times the amount of the compensatory damages which the court may award.

9. For costs of suit herein.

10. For such other and further relief as the Court deems just and proper.

DATED: February 23, 2015                COOK COLLECTION ATTORNEYS

By:    /s/ David J. Cook
DAVID J. COOK, ESQ. (SBN 060859)
Attorneys for Plaintiff
JOHN FALKENSTEIN, an individual

F:\USERS\DJCNEW\STI.COM2

SECOND AMENDED COMPLAINT FOR FRAUDULENT CONVEYANCE UNDER CIV.C. § 3439.05 AND CIV.C. § 3439.04(a), RESULTING TRUST, CONSPIRACY, AND PUNITIVE DAMAGES
CASE NO. 2:13-cv-08052-BRO-JC                                                    17